UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**AMERICAN ATHEISTS, INC.**
**and LON BEVILL,**

        Plaintiffs,

        **v.**                         **CASE No. 3:05-cv-977-J-16MMH**

**CITY OF STARKE, FLORIDA,**

        Defendant.

_____/

# O R D E R

Before the Court is Plaintiffs' Motion for Summary Judgment (Dkt. 23) (the "Motion"). Defendant, the City of Starke, Florida (the "City") failed to file a timely response to the Motion, thus Plaintiff's Motion is unopposed. Also pending before the Court is Defendant's Motion to Dismiss Complaint as Moot (Dkt. 24) and Plaintiffs' Response (Dkt. 25). For the reasons set forth below, Plaintiffs' Motion for Summary Judgment (Dkt. 23) is **GRANTED** and the City's Motion to Dismiss Complaint as Moot (Dkt. 24) is **DENIED**.

## I.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather must consider the merits of the motion. See U.S. v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida, 363 F.3d 1099, 1101 (citing to Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988)). "At the very least the district court must review all of the

evidence submitted in support of the motion for summary judgment.  Id. (citing to Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989) ("[T]he district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and supporting papers to determine whether they establish the absence of a genuine issue of material fact.)  In addition, so that there can be an effective  review of the case on appeal, the district court's order granting summary judgment must indicate that the merits of the motion were addressed.'" Id. (citing to Dunlap, 858 F.2d at 632).

In determining whether to grant summary judgment, the Court must view the evidence and inferences drawn from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988); WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988). The Eleventh Circuit explained in Lee that:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted].  The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts.  When more than one inference can be reasonably drawn, it is for the trier of fact to determine the proper one.

Id.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion.  See Augusta Iron & Steel Works, Inc., 835 F.2d at 856.

## II.    Undisputed Facts

Plaintiff, Mr. Lamer "Lon" Bevill ("Mr. Bevill") is a citizen of the State of Florida and of the

2

United States. (Bevill Aff., ¶ 2, Dkt. 23-14 at 1).  Mr. Bevill has lived in Starke, Bradford County, Florida for twenty-nine (29) years, where he owns his own home and pays taxes.  (Bevill Aff., ¶ 2, Dkt. 23-14 at 1).  Mr. Bevill is an atheist.  (Bevill Aff., ¶ 7, Dkt. 23-14 at 1; see also Dkt. 23-16).  Mr. Bevill is a dues paying member of an organization called American Atheists, which is a non-profit organization whose primary purpose is to protect and defend the rights of "non-believers." (Bevill Aff., ¶ 8, Dkt. 23-14 at 1).

The City is a municipality established by the laws of the State of Florida located within the geographical boundaries of Bradford County, Florida. (Dkt. 1, ¶ 6; Dkt. 4, ¶ 6).  The City operates a public water tower on City-owned property. (Dkt. 1, ¶ 7; Dkt. 4, ¶ 7). The name of the City is printed on the water tower in capital letters - STARKE.  (Dkt. 23-2).  In addition, next to the word STARKE is a picture of a tornado with the letter "B" in its center, which was placed on the water tower in 1999.  (Dkt. 23-2).  The name of the Bradford County High School football team is the "Tornadoes."  (Dkt. 23-4). The Tornadoes football team has never used a lowercase "t" as its symbol or logo. (Dkt. 23-4, No. 19).

There is a lighted metal structure on top of the water tower in the shape of a cross. The lighted structure was ordered placed on the water tower in the 1970s by the then Superintendent, Mr. George Graudons.  (Dkt. 23-3). The City provides un-metered electricity for the structure.  Since being placed on the water tower the structure  has required repairs and its lights have been  replaced annually. (Dkt. 23-3). These repairs and replacements were completed and provided by the City. (Dkt. 23-3).  The lighted structure is visible to people traveling on U.S. Rote 301 with a quarter mile of the lighted structure.  Mr. Bevill can see the lighted structure as he travels within the City (Dkt. 1, ¶ 13).

A cross is the universal symbol of Christianity.  (Dkt. 1, ¶ 9; Dkt. 4, ¶ 9).  Since this lawsuit was filed, bumper stickers reading "I Support <u>HIS</u> CROSS" and containing a picture of the City's water tower were printed and have been visible on vehicles.  (Dkt. 23-15; Chapman Aff., ¶ 3).  Since the inception of

this lawsuit, letters have been written to the <u>Bradford County Telegraph</u> referring to the lighted structure as a "cross" and stating that the purpose of the "cross" is "remind us in this town that Jesus died on the cross for our sins." (Dkts. 23-12 and 23-13). City Commissioner, Mr. Larry Davis said, in response to this lawsuit, "It really makes you mad to know that someone wants to take down something that represents Christ on the cross." (Dkt. 23-7, citing to an October 1, 2005, <u>Florida Times-Union</u> article). Since the inception of this lawsuit, members of the First Baptist Church of Starke, Florida have "prayed" for Mr. Bevill (Dkt. 23-8), as well as sent a letter dated October 5, 2005, to the Mayor and Elected City Officials, stating, in pertinent part, "[w]e also want you to know that we support keeping the cross on top of the water tower located in Starke. Not only is it a symbol of our Christian faith but a symbol that we live in a county where people are not ashamed to show faith." (Dkt. 23-9). Since the inception of this case, a petition to "keep the cross" on top of the City's water tower was circulated and signed by 416 people. (Dkt. 23-6).

## III.    Analysis

Plaintiffs are seeking summary judgment on the issues raised in their Complaint. Specifically, Plaintiffs ask the court to declare that a "cross on public property illuminated at public expense" violates the Establishment Clause of the United States Constitution and Article I of the Florida Constitution. In addition, Plaintiffs ask the Court to declare that Mr. Bevill has standing to pursue this suit. Finally, Plaintiffs ask the Court to enjoin the City permanently from displaying, maintaining, illuminating or otherwise allowing a cross to appear on its water tower and to award Plaintiffs their costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988.

The City failed to file a response to the Motion; however, the Court has before it the City's Answer and Affirmative Defenses (the "Answer") (Dkt. 4).   In the Answer, the City raises three affirmative defenses to Plaintiffs' suit. First, the City claims that Mr. Bevill lacks standing because he is neither a

resident of the City, nor a customer or employee of the utilities offered by the City.  The City further claims that American Atheists lack standing because it has 'no community attachment to [the City].'' (Dkt. 4 at p. 3).  Second, the City claims that Plaintiffs have failed to state a justiciable claim under 42 U.S.C. § 1983 or Article I of the Florida Constitution because Mr. Bevill neither alleges personal or prospective injury that can be traced to the conduct ascribed to the City.  Third and finally, the City claims that the neither the Establishment Clause of the United States Constitution nor Article I of the Florida Constitution have been violated because the "challenged action has a secular purpose; neither advances nor inhibits religion; to a reasonable observer, the action is not an endorsement of religion; and that the action does not comprise an excessive government entanglement with religion." (Dkt. 4, pp. 3-4).

**Standing**

The first issue is whether Plaintiffs  have standing to file this suit.  Article III of the United States Constitution limits the judicial power of the federal courts to the resolution of cases or controversies.  U.S. CONST. art III, § 2, cl. 1; see also Mendelson v. City of St. Cloud, 719 F. Supp. 1065, 1067 (M.D. Fla. 1989).  In order to satisfy the case or controversy requirement Plaintiffs must demonstrate or show that they have "standing" to sue, that is they must show that: 1) they have suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; 2) the injury is fairly traceable to conduct of the defendant; and, 3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision.  Lugan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The United States Supreme Court has held that standing may be predicated on noneconomic injury.[1]   Mendelson, 719 F.

---

[1] Plaintiffs also note that standing can be predicated on Mr. Bevill's taxpayer status. A taxpayer has standing to attack the misuse of municipal monies.  See Massachusettes v. Mellon, 262 U.S. 447, 486 (1923).  Plaintiffs are correct that this is an alternative and viable alternate ground for standing in this case.  Mr. Bevill has provided evidence that he is a taxpayer in the Bradford County as witnessed by the documents provided in Docket 23-16.  The City has not

Supp. at 1068 (citing to *inter alia* Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 486 (1982)).  Plaintiffs cite to a litany of cases in which a plaintiff complaining of noneconomic injuries had standing to sue.  The Court finds Plaintiffs citations compelling, particularly American Civil Liberties Union v. Rabun County Chamber of Commerce, Inc., 698 F.2d 1098 (11th Cir. 1983).

In American Civil Liberties Union the court found that plaintiffs had standing to sue the county and state to require the dismantling of a large, lighted cross located in a state park.  The court reached its decision based on the fact that plaintiffs were "deprived of" the use of the state park and thus had "sufficiently demonstrated particular and personalized noneconomic injury to distinguish them from the general citizenry who may be as equally offended on a philosophical basis but who are not specifically or perceptibly harmed . . . ." Id. at 1108.[2]

In this case, Plaintiffs injuries are on par with, if not worse than, those described in American Civil Liberties Union because of the overwhelmingly visibility of the lighted structure on the water tower in the City.  Regardless of the route he takes, Mr. Bevill cannot avoid the lighted structure and he is forced to view it everyday as he travels in the City, which causes him emotional injury.  As for the remaining two prongs of the test: Mr. Bevill's injuries can be traced to the presence of the lighted structure on top of the water tower, and removal of the lighted structure will likely redress Mr. Bevill's injuries.  Thus, the Court finds that Mr. Bevill has the necessary standing for him to bring this action.

---

denied that it provided un-metered electricity for the lighted structure on the water tower.  Thus, Mr. Bevill's contention that part of his taxes are being used to provide electricity to the lighted structure stands.

[2] The Plaintiffs in American Civil Liberties Union were "deprived of" use of the state park because as avid campers, they would not camp in the state park where the cross was located.

6

American Atheists also has standing to bring this action. An organization has standing to bring suit on behalf of its members when: 1) its members would otherwise have standing to sue in their own right; 2) the interests the organization seeks to protect are germane to the organization's purpose; and, 3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. See Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). Mr. Bevill, whose standing has been established above, is a member of the organization. Clearly the interests that the American Atheists seek to protect are germane to the organization's purpose, which is to protect and defend the rights of "non-believers." Finally, neither the claim asserted nor the relief requested requires the participation of individual American Atheist members in the lawsuit. The City's argument that the American Atheists group has no community attachment to the City is incorrect, as well as irrelevant to the Court's analysis.

**Establishment Clause**

Plaintiffs claim that a cross located on public property illuminated at public expense violates the Establishment Clause. It is not disputed that the City provides electricity for the lighted structure and allows its line crew department to repair the lights each year. (Dkt. 23-3). Before the Court addresses the specifics of the alleged Establishment Clause violation, it is necessary to determine if the lighted structure is a cross, more specifically, a Latin cross (a cross with a base stem that is longer than its other three arms). Based on the evidence presented by Plaintiffs, the lighted structure on top of the City's water tower is a Latin cross (the "Cross"). The Court reaches this conclusion based on a combination of visual and testimonial evidence.

Visually, the Cross on the water tower is indistinguishable from the ubiquitous crosses found on any number of churches within the State of Florida and across the country symbolizing Christianity. City

7

residents perception of the lighted structure as a cross, supports this obvious visual identification.  Since this lawsuit was filed, bumper sticker's reading "I Support <u>HIS</u> CROSS" and containing a picture of the City's water tower were printed and have been visible on vehicles; letters have been written to the <u>Bradford County Telegraph</u> referring to the lighted structure as a "cross" and stating that the purpose of the "cross" is "remind us in this town that Jesus died on the cross for our sins;" and, City Commissioner, Mr. Larry Davis said, in response to this lawsuit, "It really makes you mad to know that someone wants to take down something that represents Christ on the cross."  Also, since the inception of this lawsuit, members of the First Baptist Church of Starke, Florida have prayed for Mr. Bevill (Dkt. 23-8), as well as sent a letter dated October 5, 2005, to the Mayor and Elected City Officials, which stated, in pertinent part, "[w]e also want you to know that we support keeping the cross on top of the water tower located in Starke.  Not only is it a symbol of our Christian faith but a symbol that we live in a county where people are not ashamed to show faith." (Dkt. 23-9).  Finally, since the inception of this case, a petition to "keep the cross" on top of the City's water tower was circulated and signed by 416 people. (Dkt. 23-6).

While the City may attempt to deny the fact that it is indeed a Cross on top of the water tower, as noted above, the attitudes and comments of the citizens of and an official in the City contradict any such notion.  The Court will not entertain the idea that the Cross is actually a  lowercase "t" standing for the Bradford County High School football team the "Tornadoes."  The City admitted in its response to Plaintiffs' First Request for Admission that the Bradford County Tornadoes have never used a lowercase "t" as a symbol or logo. (Dkt. 23-4, No. 19).

In religious-symbol cases, the Supreme Court has applied the analysis outlined in <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971).  Under the <u>Lemon</u> analysis or "test," a governmental practice violates the Establishment Clause if it does not have a secular purpose, if its primary effect is to advance or inhibit

religion, or if it fosters excessive government entanglement with religion.  The Establishment Clause will preclude the challenged governmental action if <u>any one</u> of the factors listed above is violated.  <u>See</u>, <u>e.g.</u>, <u>Stone v. Graham</u>, 449 U.S. 39, 40-41 (1980).

Despite the Supreme Court's reliance on these three "tests," it has emphasized that there is no bright-line rule for evaluating Establishment Clause challenges and that each challenge calls for line-drawing based on a fact-specific, case-by-case analysis. <u>County of Allegheny v. ACLU, Greater Pittsburgh Chapter</u>, 492 U.S. 573, 592 (1989).  In recent years, the Court has "paid particularly close attention" to whether the challenged governmental practice has either "the purpose or effect of 'endorsing religion.'" <u>Id</u>.  Even though some Justices and commentators have strongly criticized <u>Lemon</u>, both the Supreme Court and this circuit continue to use <u>Lemon's</u> three-pronged analysis. Id. As the following analysis demonstrates, the Cross on top of the City's water tower violates each prong of the <u>Lemon</u> test.

The first and most critical inquiry under <u>Lemon</u> is whether the City's display of the Cross has a secular purpose.   "When a government permits religious symbols to be constructed on public property, its ability to articulate a secular purpose becomes the crucial focus under the Establishment Clause." <u>Mendelson v. City of St. Cloud</u>, 719 F. Supp. 1065, 1067 (M.D. Fla. 1989)  (citing <u>Rabun County</u>, 698 F.2d at 1110).

Plaintiffs are correct that this case closely mirrors the <u>Mendelson</u> case.  In <u>Mendelson</u>, a Latin cross was given as a gift to the City of St. Cloud, Florida ("St. Cloud") in the 1960s and was placed on top of St. Cloud's water tower where it remained until suit was filed.  The St. Cloud water tower was devoid of any signage save for the printed words "Welcome to St. Cloud" and the St. Cloud City seal.  The court in <u>Mendelson</u> found that the Latin cross is "unmistakably a universal symbol of Christianity, and it has no secular purpose."  <u>Id</u>. at 1069.  The court also stated that "no federal case has ever found the display of a

9

Latin cross on public land by a state or state subdivision to be constitutional." Id. (lengthy internal citations omitted).

The court in Mendelson concluded that:

> [St. Cloud] has no signs on or around that water tower to advise people that the cross is privately owned and that the [St. Cloud] neither supports nor disfavors the religious doctrine depicted by the cross.  Apart from the City seal, the only other visible sign on the tower reads, "Welcome to St. Cloud."  The sign's language gives the appearance that the City supports the religious doctrine of the cross, which is Christianity.  Because the cross is atop the tower year round without accompanying secular symbols or disclaimers that would announce to the public that [St. Cloud] is disinterested in religious features, [St. Cloud's] purpose behind placing the cross on the tower could not be secular (internal citations omitted).

Id. at 1070.

In this case, as in Mendelson there is no signage on the City's water tower save for a picture of a tornado and the word "STARKE" spelled out in capital letters.  If anything, the notion that the Cross could be secular in this case is undermined by the presence of the tornado, the symbol for the Bradford County High School football team.  It appears from the presence of the tornado and the Cross, that the City supports its high school football team and Christianity.

The second prong of the Lemon test requires that the perceived governmental practice have the principal or primary effect of not advancing or inhibiting religion.  In Lynch v. Donnelly, 465 U.S. 668, 694 (1984), Justice O'Conner noted in her concurring opinion that "[w]hat is crucial is that a government practice not have the effect of communicating a message of government endorsement or disapproval of religion."  This prong of the Lemon test uses an objective standard.  The specific inquiry is how the average citizen fairly interprets the message the challenged practice conveys looking at the "unique circumstances" presented in each case.  Id.

The display of the Cross on the water tower has the unconstitutional effect of advancing, affirming

or otherwise validating Christianity.  Further, as discussed above, citizens interpret the Cross as an expression of government support for Christianity.  To the objective observer, the combination of the words "STARKE" and the Cross on the water tower clearly communicates the City's endorsement of Christianity to the exclusion of all other religions.

The third prong of the <u>Lemon</u> test requires that the perceived governmental practice not foster an excessive governmental entanglement with religion.  In this case the question is whether the City's maintenance and illumination of the Cross are "excessive governmental entanglement."  The answer is yes.  The City has acknowledged that it alone has paid for the maintenance and illumination of the Cross.  A former City worker decreed that the Cross should be constructed and City workers utilized their time to construct and place the Cross on top of the water tower.  Since its placement on top of the water tower, the Cross has been maintained through City work orders and illuminated by the City.  If ever there were a clear case of "excessive governmental entanglement" with religion, this is it.

**The Florida Constitution**

Article 1, Section 3 of the Florida Constitution reads that:

> There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof. Religious freedom shall not justify practices inconsistent with public morals, peace or safety. No revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.

FL. CONST. Art. 1, Sec. 3.

As Plaintiffs note, Florida courts adopt the federal interpretation of the First Amendment to the extent that it tracks the Florida Constitution.  <u>Todd v. State of Florida</u>, 643 So. 2d 625 (1st DCA 1994).  Under federal law, the Government is not allowed to sponsor, support or be actively involved in religious activities.  <u>Lemon</u>, 403 U.S. 612-13.  Thus, Plaintiffs would be entitled to judgment under Florida law as

11

well as federal law.  Judgment is particularly appropriate in this case because of Florida's express provision that "[n]o revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution."   In this case, the City used public funds and its personnel to erect, repair, maintain and illuminate the Cross.  This use of funds is a clear violation of the Florida Constitution.  Accordingly, the Cross violates the Florida Constitution.

## IV.    Conclusion

The Court is cognizant of the fact that there is a lot of support for keeping the Cross within the City; however, as the Eleventh Circuit has stated so clearly and eloquently before, "we cannot close our eyes to the light of the cross on the ground that it represents only a minor encroachment of this constitutional command, for the 'breach of neutrality that is today a trickling stream may all to soon become a raging torrent.'" American Civil Liberties Union v. Rabun County Chamber of Commerce, Inc., 698 F.2d 1098, 1111 (11th Cir. 1983) (internal citations omitted).

In the Motion to Dismiss Complaint as Moot (Dkt. 24), the City informs the Court that it has removed the Cross from the water tower.  Despite the removal, it is necessary to grant the Motion because it is not absolutely clear that the City will not put the Cross back on top of the water tower at a later date. This is especially true in light of the fact that the City's Motion to Dismiss Complaint as Moot speaks only to the instant removal of the Cross and makes no pledge, promise or any type of formal binding commitment not to replace it at some future date.  Thus, the Court can only conclude that without the entry of summary judgment the City may at some point in the future seek to put the Cross back on the water tower.

For the reasons set forth above, the Court finds that Plaintiffs are entitled to summary judgment on

each of the Counts raised in their Complaint.  Accordingly, the Court **GRANTS** Plaintiffs' Motion (Dkt. 23) and enjoins the City from displaying, maintaining, illuminating or otherwise allowing a Latin cross to appear on its water tower and **DENIES** the City's Motion to Dismiss Complaint as Moot (Dkt. 24).

     **DONE AND ORDERED** in Chambers at Jacksonville, Florida on this 19th day of March 2007.

JOHN H. MOORE II
United States District Judge

Copies to:  Counsel of Record