**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**AMERICAN ATHEISTS, INC.
and LON BEVILL,**

    Plaintiffs,

    v.                                                                                     **CASE No. 3:05-cv-977-J-16MMH**

**CITY OF STARKE, FLORIDA,**

    Defendant.
_____/

## O R D E R

Before the Court for consideration is Plaintiffs' Motion for Attorney Fees (Dkt. 29) (the "Fee Motion"), to which Defendant, the City of Starke, Florida (the "City") failed to file a timely response. Also pending before the Court is Plaintiffs' Motion for Order to Show Cause as to Why Sanctions Should Not Be Imposed (Dkt. 33) (the "Show Cause Motion"). For the reasons that follow, Plaintiffs' Fee Motion (Dkt. 29) is **GRANTED in PART and DENIED in PART** and the Show Cause Motion (Dkt. 33) is **DENIED**.

    **I.    THE FEE MOTION**

    **A.    BACKGROUND**

Plaintiffs filed this action pursuant to the Establishment Clause of the United States Constitution and Article I of the Florida Constitution against the City asking the Court to issue an order enjoining the City from displaying, illuminating or otherwise allowing a Latin cross to appear on its water tower. (Dkt. 1). Plaintiffs then filed a Motion for Summary Judgment (Dkt. 23) on the

issues raised in their Complaint. The City failed to provide the Court with a timely response to the Motion for Summary Judgment, except to file a Motion to Dismiss Complaint as Moot (Dkt. 25) claiming that the City had removed the Latin cross and thus the issue was moot.

On March 20, 2007, the Court entered an Order granting Plaintiffs' Motion for Summary Judgment (Dkt. 26). In that Order the Court enjoined the City from "displaying, maintaining, illuminating or otherwise allowing a Latin cross to appear on its water tower." (Dkt. 26 at p.13). Thus, Plaintiffs are the prevailing party in this case. Pursuant to 42 U.S.C. § 1988, the Court may "allow the prevailing party . . . .a reasonable attorney's fee as part of the costs" to a successful plaintiff under the Civil Rights Attorney's Fees Award Act of 1976. In addition, 28 U.S.C. § 1920 provides for taxation of costs to a prevailing party.

**B.    FEES**

Plaintiffs' attorneys[1] ("Counsel") informed the Court in their lengthy Fee Motion, with supporting affidavits, that they are entitled to significant fees for this case; however, nowhere do Counsel provide the Court with a simple, concise and complete chronological summary of the fees requested with the corresponding amounts billed. Instead, in three separate places in the Fee Motion, Counsel asks for entirely different amounts - $24,844.38.00 (Dkt. 31-6 at p.16); $46,597.50 (Dkt. 31-2 at p. 4); and a range between $41,386.25 and $48,808.75 without an enhancement and between $67,646.25 and $73,213.13 with an enhancement factor of 1.2 to 1.5 (Dkt. 32-2 at p. 7). Using the information provided by the "Fee Expert" hired by Counsel, Mr.

---

[1] During the course of this case, Plaintiffs' legal team included three attorneys and a paralegal. The Court uses the term "Counsel" to define the entire legal team.

James K. Green ("Mr. Green")(Dkt. 32-2), the Court has deduced the following:[2]

1. Mr. Frank Shooster worked on this case for 48.9 hours at the varying rates of either $350.00 or $400.00 per hour (Mr. Shooster's hourly rate changed from $350.00 to $400.00 in June 2006);

2. Ms. Tiffany Kleinman worked on this case for 88.05 hours at the varying rates of either $225.00 or $275.00 per hour (Ms. Kleinman's hourly rate changed from $225.00 to $275.00 in January 2006);

3. Ms. Linda Chapman worked on this case for 3.50 hours at the varying rates of either $250.00 or $300.00 per hour; and,

4. Ms. Tammy Clair (paralegal) worked on this case for a total of 8.50 hours at the constant rate of $85.00 per hour.

Thus, according to the hours provided and using the low and high end hourly rates charged by Counsel, Counsel are entitled to, by the Court's calculation, between $38,523.75 and $45,546.25 for their work on this case.

However, the Court's calculations, which the Court has extrapolated from the disjunctive and confusing statements of Counsel in the Fee Motion, are complicated by two factors. First, Counsel inform the Court that they accepted this case on a modified contingency fee basis. A copy of the contingency agreement was to have been provided to the Court, but this was not done, nor were the terms of this fee agreement set out. In the body of the Fee Motion, Counsel inform the Court that "we agreed to accept this matter on a modified contingency basis, under which [Plaintiffs] would be billed one half of our normal hourly rate (enough to recoup our overhead) plus

---

[2] The Court was not provided with the exact dates in January and June of 2006 that Mr. Shooster and Ms. Kleinman's hourly rates were increased. It is therefore not possible to determine exactly what Plaintiffs were billed by Mr. Shooster and Ms. Kleinman during this case.

3

any amount determined to be reasonable by the court, with a refund to the extent the court award exceeded the amount actually paid. Thus far, the plaintiffs have paid a total of $5,000.00." (Dkt. 29, pp. 8-9). The Court presumes that the hourly calculations provided in Docket 31-6 at page 16, which read that Counsel recorded 160.30 hours of work on this case with a total in fees billed as $24,844.38, must be based on the terms of the contingency agreement in which Counsel agreed to provide their services at half of their normal billing rates. See Dkt. 29, pp. 8-9. Second, Counsel requests that the Court award them a multiplier of 2.0 in this case (Dkt. 29 at p. 19) or an enhancement factor of between 1.2 and 1.5 (Dkt. 32-2 at p. 7) due to the undesirability of the case, as well as the fact that the case was a "high-risk" one.

The Supreme Court has held that the lodestar approach governs the attorney's fees analysis under fee-shifting statutes. See City of Burlington v. Dague, 505 U.S. 557, 561-62 (1992). Under the lodestar approach, the value of the lawyer's services is determined by the product of hours reasonably expended multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292 (11th Cir. 1988). In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), the court set out twelve factors to be considered in determining the reasonableness of attorney's fees: (1) the time and labor required; (2) the novelty and difficulty of the question involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment due to acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar cases.[3] The manner in which the Johnson factors influence an award of fees must be elucidated by the court. See In re Celotex Corp., 227 F.3d 1336, 1341 (11th Cir. 2000); NAACP v. City of Evergreen, Ala., 812 F.2d 1332, 1336 (11th Cir. 1987) (quoting King v. McCord, 621 F.2d 205, 206 (5th Cir. 1980)).

All twelve factors need not be considered here, however, because the Eleventh Circuit has adopted a three-pronged approach to assessing a plaintiff's fee application under 42 U.S.C. §1988. Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000). Under this approach, the threshold issue is whether the plaintiff qualifies as a "prevailing party" within the meaning of the statute. The second step requires the court to calculate the "lodestar" by multiplying the reasonable hourly rate times the number of hours reasonably expended on the litigation. Blum v. Stenson, 104 S.Ct. 1541 (1984). Third, the court must determine whether an adjustment to the lodestar is necessary "to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." Dillard, 213 F.3d at 1353 (citing to Hensley v. Eckerhart, 103 S. Ct. 1933 (1983)). A fee applicant bears the burden of proving the reasonableness of the amount requested. Although a district court has broad discretion in determining the amount of an award, it must articulate the reasons underlying its decisions to allow for appellate review. Norman v. Hous. Authority of Montgomery, 836 F.2d 1292 (11th Cir.

---

[3] The Eleventh Circuit has adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, Ala;, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

1988).

The first "lodestar" factor considered is the hourly rate. "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable comparable skills, experience and reputation." Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996)(quoting Norman, 836 F.2d at 1299). Second, the court must next consider the reasonableness of the hours expended. It is appropriate for the court to exclude excessive, redundant, and unnecessary hours; hours which are inadequately documented; and hours which would be unreasonable for an attorney to bill the client or opposing counsel in the exercise of good billing judgment. See Hensley, 461 U.S. at 434; Duckworth, 97 F.3d at 1397; Norman, 836 F.2d at 1301. In reviewing petitions for attorney's fees, the court exercises its discretion in determining what constitutes reasonable hours. Gray v. Lockheed Aeronautical Sys. Co., 125 F.3d 1387 (11th Cir. 1997).

In this case, Counsel are not from the Middle District of Florida; rather, they are from the Southern District of Florida, where counsel usually charge higher hourly rates, at least $25.00 to $50.00 more per hour. (Dkt. 32-2 at p. 4). While the rates charged by Counsel may be within the range of the customary market rate in the Southern District, they are much higher than the rates charged by similar lawyers in the Jacksonville/Starke area and they are most certainly at the top of the range for lawyers practicing in this area of the law. In addition, Plaintiffs do not inform the Court exactly why hiring counsel from outside the Middle District was necessary except to say that "Plaintiffs were having difficulty retaining counsel. Several attorneys declined the case stating

[that] it would go against their religious beliefs." (Dkt. 29 at p. 4).  This explanation lacks the specificity the Court needs to evaluate whether Plaintiffs' choice to hire non-local counsel was justified.

This lack of specificity is somewhat offset by Counsel's credentials.  The Court finds that the resumes provided by Counsel effectively demonstrate that Counsel have the experience and expertise to justifying charging higher hourly rates.  Thus, the Court finds that the following rates are appropriate for Counsel: $350.00 per hour for Mr. Shooster; $225.00 for Ms. Kleinman; $250.00 for Ms. Chapman; and, $85.00 for Ms. Clair. These are the "historical" rates charged by Plaintiff's counsel when the case began.  The decision by Counsel to take this case and charge half of their "normal" hourly rates however,  must also be taken into consideration when determining the proper hourly rate.

In Blanchard v. Bergeron, 109 S.Ct. 939 (1989), the Supreme Court held that a contingency fee arrangement between a plaintiff and his counsel is only one factor to be considered and cannot, standing alone, limit the trial judge's discretion in setting a reasonable fee. The Court expressly held that the contingency fee agreement does not serve as a cap in determining a reasonable fee, stating, "[t]he trial judge should not be limited by the contractual fee agreement between plaintiff and counsel." Id. at 946.  Based on the Supreme Court's reasoning in Blanchard, the Court finds that Counsel should not be limited to the $24,844.38 billed to the Plaintiffs to date, which apparently represents the total fees charged under the contingency agreement in which Counsel agreed to provide their services at half of their normal billing rates.

Counsel are not entitled to a windfall either however. The goal of the Court is to determine an hourly fee that will adequately compensate Counsel for their work on this case. Because Counsel agreed to take on an unpopular case and, to date, has only been partially compensated, the Court finds that receipt of their "historical" rate is fair for Counsel.

In reaching this decision, the Court has considered, and rejected, the arguments made by Counsel that "current rates must be awarded to compensate plaintiff's attorneys for the delay in payment." (Dkt. 29 at p 13 (internal citations omitted)). The contingency fee arrangement protected Counsel by ensuring that they would, at least, receive their "overhead" costs back. If Counsel were willing to accept half of their normal billing rates under an agreement that they voluntarily entered into, they cannot be heard to complain now about receiving their significantly higher "historical" hourly rates.

The Court now turns its attention to the second "lodestar" factor, the number of hours Counsel worked on this case. In general the Court concludes that the hours Counsel billed for this case are within the limits of reason. According to the Statement of Fees provided the overall number of hours worked on this case were 160.3. (Dkt. 31-6). As reflected by the handwritten notations in margins of the Statement of Fees, Mr. Shooster and Ms. Kleinman voluntarily reduced their hours by 5.6 hours and .8 hours respectively. There were no reductions of Ms. Chapman's or Ms. Clair's hours. Mr. Green, the Fee Expert, then further reduced Ms. Kleinman's hours from 94.98 to 88.85 based on his review of the Statement of Fees. These reductions brought the total hours worked by Counsel on this case to 148.95. However, there are several specific entries that

require further reduction in hours.  These reductions are as follows: 1) the December 21, 2004, entry from Mr. Shooster regarding post-strategy questions on Florida NELA list-serve & review responses from 9 attorneys re timing, mootness, temporary injunctive relief and standing (1.1 hours), is unreasonable and should be reduced to (.5 hour); 2) the two September 28, 2006, entries from Ms. Kleinman to draft/revise a *Pro Hac Vice* motion (.5 hour and .2 hour) are unreasonable as no such motion was filed; 3) Ms. Kleinman's entries from March 22, 2007 to April 3, 2007, for work on the Attorneys' Fees Motion (10.3 hours) are excessive and should be reduced to 6 hours, which is a much more reasonable time for preparation of such a motion; 4) Mr. Shooster's entry from March 21, 2007 for drafting the Fee Motion, editing it and adding a section on "unattractive client" (4 hours) is excessive and will be reduced in half to 2 hours, which is more reasonable and, 5) the April 1, 2007, entry from Mr. Shooster for analysis of billing rates by South Florida attorneys from NELA survey (1.3 hours) is unreasonable and should be reduced to (.7).

Applying these reductions (3.2 hours for Mr. Shooster and 5 hours for Ms. Kleinman) to the appropriate hourly rates, the Court finds that Counsel should be awarded fees of $36,278.75, in accordance with the following:

1. Mr. Frank Shooster: 45.7 hours (48.9 hours minus 3.2 hours) at $350.00 per hour = $15,995.00.

2. Ms. Tiffany Kleinman: 83.05 hours (88.05 hours minus 5 hours) at $225.00 per hour = $18,686.25.

3. Ms. Linda Chapman: 3.50 hours at $250.00 per hour = $875.00; and,

  4.  Ms. Tammy Clair: 8.50 hours at $85.00 per hour = $722.50.

The final question before the Court is whether Counsel is entitled to any adjustment of the "lodestar." As noted above, Counsel has requested that their fees be "enhanced" or multiplied to compensate them for taking an "undesirable" case.

It is generally within the discretion of the court whether to increase the lodestar amount. However, in the 1984 decision, <u>Blum v. Stenson</u>, cited above, the Supreme Court ruled that an upward adjustment of a statutory fee award under 42 U.S.C §1988 is warranted only in "exceptional circumstances." The Supreme Court expressly noted that although the statute provides that a reasonable attorney's fee is to be awarded, factors such as the complexity or novelty of the issues or the general quality of the representation typically are reflected in the hourly rate used to compute the fee. Thus, it found that neither novelty nor complexity could be used to enhance a fee award under the statute and that the quality of the representation "may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to what one reasonably should expect in light of the hourly rates charged and that the success was "exceptional." <u>Blum</u>, 104 S.Ct at 1549.

While Counsel did prevail in this case, they will be receiving significant compensation for their victory. The quality of service Plaintiffs received in this case is already reflected in the hourly rates charged by Counsel. Thus, the Court finds that an enhancement or multiplier is not warranted in this case.

  **C.**  **COSTS**

The City failed to file a timely response to the Fee Motion and, thus, does not dispute the litigation costs requested by Counsel, specifically $1,515.35 in standard costs and $2,340.00 for the services of Mr. Green, the "Fee Expert" hired by Counsel.

Section 1920 allows the taxing of certain costs incurred in an action, including clerk fees, court reporter fees (if the transcript is necessarily obtained for use in the case), witness fees, charges for copies (if necessarily obtained for use in the case), and compensation of certain court appointed experts and interpreters. (28 U.S.C. § 1920). In Duckworth, the Eleventh Circuit held that charges such as those for general copying, computerized legal research, postage, and other miscellaneous expenses (like parking) are not taxable. Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996).

Under 42 U.S.C § 1988, however, the prevailing party is entitled to recover much more in the way of litigation expenses, "'[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988' and 'the standard of reasonableness is to be given a liberal interpretation.'" NAACP v. City of Evergreen, 812 F.2d 1332, 1337 (11th Cir. 1987) (alteration in original and internal citations omitted). In other words, any expenses incurred during the course of litigation which are normally billed to fee-paying clients should be taxed under section 1988. See Abrams v. Lightolier, 50 F.3d 1204, 1225 (3d Cir. 1995). See Abrams v. Lightolier, 50 F.3d 1204, 1225 (3d Cir.1995). Therefore, "[t]he standard necessarily involved a case-by-case balancing of relevant factors. The guideline of

what is includable must be that which is appropriate in the context of the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted."

In this case, the Court finds that with three exceptions - computer-aided research, process server fees and compensation for Mr. Green - the full costs requested should be awarded.

Counsel billed $867.32 in computer-aided research charges. (Dkt. 31-6 at p. 16) Counsel have already been handsomely compensated for the time that they spent researching matters for this case. See Docket 31-6 at p. 7. No additional compensation is necessary.

Counsel seeks reimbursement in the amount of $50.00 for process server fees. "Private process server fees may be taxed pursuant to §§ 1920 (1) and 1921" as long as they "do not exceed the statutory fees authorized in § 1921." Equal Employment Opportunity Commission v. W & O, Inc., 213 F.3d 600, 620 (11th Cir. 2000). The United States Marshal's fee for serving a subpoena or summons under 28 U.S.C. § 1921 is $45.00 per witness. Accordingly, the Court finds that a total of $45.00 for the process server's fee is taxable, representing a $5.00 reduction.

Counsel employed Mr. Green as their "Fee Expert." Essentially Mr. Green was hired to cull through the attorney billing records and offer an opinion as to the validity of the number of hours worked and the rates charged. Based on his credentials, Mr. Green is a qualified expert who is entitled to compensation for his services. Just because Counsel agreed to pay Mr. Green the hourly rate of $450.00 however does not mean that the Court must find that rate reasonable. The Court finds that Mr. Green's hourly rate is too high and reduces it to $300.00 per hour. This reduction

means that the City shall be responsible for paying Mr. Green $1,560.00 (5.2 hours at $300.00 per hour) for his services as Fee Expert as opposed to the $2,340.00 (5.2 hours at $450.00 per hour) Counsel agreed to pay him.

Based on the above, the Undersigned recommends that Plaintiffs be awarded $2,203.03 in costs - $643.03 ($1.515.35 minus $867.32 (computer-aided research) and $5.00 (excess process server fee) and $1,560.00 for Mr. Green's services.

## II. THE SHOW CAUSE MOTION

Plaintiffs ask the Court to issue an Order to show cause why sanctions should not be imposed on the City in this case. The Show Cause Motion (Dkt. 33) is **DENIED**. It is clear only in hindsight that the City could have concluded early in the case that a Latin cross on a municipal water tower was a clear violation of the Establishment Clause.

Because the Show Cause Motion was denied, Counsel should not be able to recoup the fees charged by Ms. Kleinman for its filing. Specifically, On April 4, 2007, Ms. Kleinman billed .4 hours for research on "1927 standards for sanctions." Accordingly, the Court will further reduce the fees awarded to Counsel by an additional $90.00 (.4 hours of Ms. Kleinman's time at $225.00 per hour).

In summary, it is **ORDERED** that the Show Cause Motion (Dkt. 33) is **DENIED** and the Fee Motion (Dkt. 29) is **GRANTED In PART and DENIED in PART**. In accordance with the Court's conclusions in its discussions of the Fee Motion, it if **FURTHER ORDERED** that within thirty (30) days from the date of this Order the City shall pay:

      1.      $36,188.75 in fees to Counsel for the 140.35 hour spent on this case; and,

      2.      $2,203.03 in costs.

Because the court does not anticipate the necessity of awarding any additional attorneys' fees in this case, there is no reason for it to retain jurisdiction over this case. The Clerk is directed to enter judgment for Plaintiffs and to close this case. All motions still pending in this case are **DENIED as MOOT**.

**DONE AND ORDERED** in Chambers at Jacksonville, Florida on this 21st day of June 2007.

_____
JOHN H. MOORE II
United States District Judge

Copies to: Counsel of Record